COOPER v. OTIS CO.

(Circuit Court, D. Massachusetts. November 11, 1907.)

No. 133 (Old No. 1,790).

1. PATENTS—INFRINGEMENT—KNITTING MACHINES.

The Hurley patent, No. 572,679, for improvements in circular knitting machines used for knitting ribbed fabrics which employ two revolving needle cylinders, one above the other, describes as the substantial improvement intended to be covered such a construction of the machine as to enable the finished work to be taken up either above or below the cylinders, and an essential feature of such construction is the making of the two cylinders of the same size and form. As so construed the patent *held* not infringed by a machine in which the cylinders were not of the same size nor form.

2. SAME—CAMS FOR KNITTING MACHINES.

The Barratt patent, No. 601,408, for an improved cam for circular knitting machines, strictly construed as required by the prior art, *held* not infringed.

In Equity. On final hearing.

Charles F. Perkins and Everett N. Curtis, for complainant.
Franklin Scott and William A. Macleod, for defendant.

COLT, Circuit Judge. This is a suit for infringement of the Hurley patent, No. 572,679, dated December 8, 1896, for improvements in circular knitting machines, and the Barratt patent, No. 601,408, dated March 29, 1898, for improvements in cams for knitting machines. The Hurley patent relates to the type of knitting machines which employ two revolving needle-cylinders located one above the other, and which are used for knitting ribbed fabrics.

The patent says:

"My invention relates to certain improvements in circular knitting machines wherein two revolving needle-cylinders, one above the other, are employed."

The patent then proceeds to state the objects of the invention: First, "to simplify the driving or revolving mechanism of the cylinders to produce a more even and steady movement"; second, "to effect the ready and compact assembling of the parts"; third, "to provide a vertical adjustment of the upper cylinder with relation to the lower one, to enable the varying of the length of the loop as may be required in the operation of producing the fabric"; fourth, "to so construct the machine as to enable the finished work to be taken up either above or below the cylinders." An examination of the Hurley patent discloses that the substantial improvement described and intended to be covered by the patent relates to the last enumerated object, namely, "to so construct the machine as to enable the finished work to be taken up either above or below the cylinders."

This feature of the patent is covered by claim 4, and it is to this claim that the evidence and briefs of counsel, on the issue of infringement, are mainly directed.

Claim 4 reads as follows:

"4. In a circular-knitting machine, the combination with two oppositely-arranged conical needle-cylinders of the same size and form supported on the

main frame, said cylinders having a space between their opposing edges and said edges being rounded on their inner surfaces, each of said cylinders having formed in its periphery a series of grooves for the reception of needles, a series of needles supported in said grooves and crossing each other on a line midway of the space between the cylinders whereby the finished work may be taken upwardly or downwardly from the needles, as and for the purpose set forth."

The prior art and the invention covered by claim 4 are set forth with great clearness and fullness in the following extract from the specification:

"In Fig. 6 I have represented the old way in which conical needle-cylinders are arranged, with a space between them, the lower cylinder, C, being slightly smaller than the upper one, D, and in this case having its needle-grooves, $c'$, at the same angle with grooves, $d'$, in the lower outer edge of the upper cylinder, so that the lower needles traverse both sets of grooves. By this arrangement of the cylinders the needles working in the grooves above and below will cross each other on a line with the upper edge of the space between the cylinders, so that when the loops are being formed on the needles of the upper cylinder it becomes necessary that the needles of the lower cylinder be pushed outward that the loops previously formed can be cast off, and this is done by means of an adjustable cam, C', on a stationary arm, D', on the inside of the cylinder, or by some other equivalent device, in most cases where conical cylinders adjacent to each other and spring-needles have been used.

"In all cases where the cylinders are constructed so that the needles will cross each other at the upper or lower edge of the space between them the cam, C', is required to be adjusted near the edge of the cylinder on the opposite side of the space from where the needles cross, so that the finished work, as it is cast off from the needles, can pass within the cylinders between the end of the cam and the point where the needles cross and be taken up. As illustrated in Fig. 6, it is clearly shown that by such a construction the finished work, $e'$, will pass into the cylinder above the cam, C', and be taken up above the cylinders, though the cylinders may be reversed in another machine, so that the finished work may pass under the end of the cam, C', and down through the lower cylinder to the take-up below.

"It is clearly evident, then, that machines constructed prior to my invention have not been so arranged that in any one machine the finished work can pass to the take-up either above or below the cylinders after passing in between them, as the circumstances of the case may demand, as when the ceiling is very low in the room in which the machine is operated and there not being room above the machine the finished work can be lowered to a take-up below, or

when the ceiling is high in the room the finished work can pass to a take-up above the cylinders, which is preferable, as then the work is preserved without soiling and is always in view of the operator.

"The object of my particular construction and arrangement of conical needle-cylinders is to remedy the difficulty heretofore experienced in not being able in the same machine to adjust the parts so that the finished work can pass to the take-up from the interior of the cylinders to either above or below the cylinders, and to this end Fig. 8 represents my improved conical cylinders, each of which is of the same form and size, and the upper one adjusted above the lower one by means of the brackets, J, leaving the ordinary space between their adjacent ends. In this arrangement of parts the needles of each cylinder are confined to their own separate grooves and must necessarily cross each other at $h'$, in the center of the space between the cylinders, as is clearly indicated in the drawings, and the loops formed on the needles are cast off by means of the cams and pressers, as hereinbefore described, and shown in Fig. 1, and the stationary arm, D', and adjustable cam, C', thereon for pushing the needles outward, as shown in Fig. 6, are dispensed with, leaving the interior space of the cylinders unobstructed to enable the finished work to extend up through the center of the cylinder to the take-up above, as indicated in the section-line, $b'$, or to be let down through the lower cylinder to the take-up below, as indicated by dotted lines, $f'$. In order that the finished work in passing from the needles to the take-up may not be injured, the opposing edges of the needle-cylinders are rounded on their inner faces, as indicated in Fig. 8, thereby presenting a smooth surface over which the work may pass as it leaves the needles in being taken up above or below the cylinders."

The foregoing drawings and extract from the specification make perfectly plain the substantial invention covered by claim 4 as it lay in the mind of the patentee. Hurley conceived the simple idea of making the two cylinders of the same size and form as shown in figure 8, as distinguished from prior machines in which one cylinder was slightly larger than the other, as shown in figure 6. This was the way he accomplished his object of constructing a machine in which "the finished work may be taken upwardly or downwardly from the needles." This was the "remedy" he devised for overcoming "the difficulty heretofore experienced in not being able in the same machine to adjust the parts so that the finished work can pass to the take-up from the interior of the cylinders to either above or below the cylinders." From the very nature of the problem, it is difficult to see how it could have been solved in any other way. In other words, in order to accomplish Hurley's object of taking the finished work either upwardly or downwardly to a take-up, the cylinders must be of the same size and form.

Starting with the simple idea of making the cylinders of the same size and form, all the results enumerated in the patent are merely the incidents which accompany the carrying out of this conception: First, "the needles of each cylinder are confined to their own separate grooves"; second, the needles "must necessarily cross each other at $h'$ in the center of the space between the cylinders, as is clearly indicated in the drawings"; third, "the loops formed on the needles are cast off by means of the cams and pressers, as hereinbefore described, and shown in Fig. 1"; fourth, "the stationary arm, D', and adjustable cam, C', thereon for pushing the needles outward, as shown in Fig. 6, are dispensed with, leaving the interior space of the cylinders unobstructed to enable the finished work to extend up through the center of the cylinder to the take-up above, as indicated in the

section-line, $b'$, or to be let down through the lower cylinder to the take-up below, as indicated by dotted lines, $f'$."

While the words "of the same size and form" were in the original application, they were omitted from claim 4 as originally drawn, and the claim was rejected. It was only upon the insertion of these words that the claim was finally allowed. These proceedings in the Patent Office not only emphasize the fact that cylinders of the same size and form constitute the very essence of the Hurley invention, but they impose this specific limitation upon the claim.

It is also manifest that Hurley used the words "same size and form" in their ordinary sense of bigness and shape, and hence as signifying two cylinders which are duplicates or counterparts of each other. In figure 6 we find one cylinder is "slightly smaller" than the other, in consequence of which the needles cross each other "on a line with the upper edge of the space between the cylinders." This is the prior art. In figure 8 we find the two cylinders identical in size and form, in consequence of which the needles "must necessarily cross each other at $h'$ in the center of the space between the cylinders," and, further, the inside cam and stationary arm are dispensed with, "leaving the interior space of the cylinders unobstructed to enable the finished work to extend up through the center of the cylinder to the take-up above," "or to be let down through the lower cylinder to the take-up below." It is also apparent that "same size and form" in the Hurley patent refers particularly to what are known as the knitting ends of the cylinders. As seen in figure 8, the knitting ends of the cylinders are of the same diameter, the angle of inclination of the sides of each cylinder is the same, and the knitting ends of the cylinder are of the same form or shape. It is evident that the cylinders must possess the first two features in order to have the needles pass in the center of the space between the cylinders, and that they must possess all these features in order to accomplish Hurley's object of taking the finished work either upwardly or downwardly from the needles in the manner described in his patent.

As further showing that Hurley contemplated that the knitting edges should be of the same form, the patent says:

"In order that the finished work in passing from the needles to the take-up may not be injured, the opposing edges of the needle-cylinders are rounded on their inner faces, as indicated in Fig. 8, thereby presenting a smooth surface over which the work may pass as it leaves the needles in being taken up above or below the cylinders."

This language is conclusive upon the point that the knitting edges are identical in form.

From this analysis it is plain that needle-cylinders which are not of the same size and form, and especially needle-cylinders which are not of the same diameter at their knitting ends, or in which the angle of inclination of the sides of each cylinder is not the same, so that the needles do not cross in the center of the space between the two cylinders, or in which the knitting ends are of different shape so that the finished work will not pass to the take-up in the manner shown in figure 8, are not needle-cylinders within the meaning of the Hurley

patent, and are not, therefore, within the invention which is the subject matter of claim 4.

The complainant takes a different view of the Hurley invention and of the meaning of the words "of the same size and form" in the patent, and it is upon this view that it bases its whole theory of infringement. This view may be stated as follows: The chief object of the Hurley invention was to dispense with the inside cam. For the purpose of accomplishing this, the cylinders are made of the same size and form. Same size and form means substantially of the same size and form, size having reference to the diameter of the cylinders at their knitting ends, and form having reference solely to the angle of inclination of the sides of the cylinders. Any variation in the diameters of the cylinders at their knitting ends, and any variation in the angles of inclination of the sides of the cylinders, is immaterial so long as the inside cam is dispensed with. The center of the space between the cylinders means any portion of the space between the edges of the cylinders, and hence any variation in the diameters of the cylinders, or in their angles of inclination, is immaterial so long as the needles cross between those edges and operate without the aid of the inside cam.

This whole theory is manifestly founded upon a radically wrong construction of the Hurley patent. There is nothing in the patent which in any way supports such a construction. It is not only at variance with Hurley's generic idea, but with the clear and unmistakable language of the specification and of claim 4.

The complainant asks the court to adopt this construction of the Hurley patent upon the ground that the Hurley machine was the first practical rotary spring-needle machine for knitting ribbed shirts and underwear. I cannot see the force of this argument. The Hurley patent is simply for certain mechanical improvements in a highly advanced art. It refers in no way to the fabric which is produced. The issue in the case is plainly a mechanical issue, and not a fabric issue.

But, if we should assume that the fabric produced by the Hurley machine has some bearing on the construction of the patent, the following considerations are important: It is admitted that rotary spring-needle machines for knitting ribbed fabrics were old in the art, the only contention being that the old machines were not of sufficient size to knit underwear; second, in my opinion it is doubtful whether a machine constructed after the Hurley patent was a successful commercial machine without the addition of a depending flange on the upper cylinder—at all events, the evidence shows that this was a defect in the Hurley machine.

As to the superiority of the fabric produced on the Hurley machine, which is also urged by the complainant, I am not satisfied that the evidence supports this contention, first, because of the defect in the original Hurley machine; and, second, because it does not appear to what extent the claimed superiority of the fabric made on the present Hurley machine is due to the several additions which have been made to that machine in the progress of the art.

The defendant's machine is of the same type of knitting machine as that described in the Hurley patent; that is, it employs two re-

volving needle-cylinders located one above the other, and is used for knitting ribbed fabrics. In this machine one cylinder is slightly larger than the other, and the angles of inclination of the cylinders differ slightly, so that the needles do not cross each other "on a line midway of the space between the cylinders." In this machine the ends of the cylinders are not of the same form, since the upper cylinder has a depending flange which causes the fabric to run downwards below its edge before it passes to the take-up above. Further, in this machine the fabric can only pass upwardly to a take-up above the machine. The defendant's machine does not infringe claim 4 of the Hurley patent, because the cylinders are not of the same size and form within the meaning of that patent, and because the finished work cannot be taken upwardly or downwardly within the meaning of that patent.

The three remaining claims in issue are as follows:

"1. In a circular-knitting machine, the combination of upper and lower brackets on the main frame, upper cap-plate and lower annular bed-plate supported by and secured to said brackets, each of said plates having an annular recess at its inner periphery, upper and lower supporting-rings each provided with a flange fitting in the recess of its cap or bed plate whereby the supporting-rings are carried by and revolved within the cap and bed plates, upper and lower needle-cylinders connected to the supporting-ring to revolve therewith, gear-rings also connected to said supporting-ring, and suitable gearing to impart uniform movement to both cylinders, as and for the purpose set forth.

"2. In a circular-knitting machine, the combination with stationary brackets on which the lower needle-cylinder is supported, of vertically-adjustable brackets to which the upper needle-cylinder is connected, screw heads or nuts secured to a fixed portion of the frame of the machine, and jack-screws working in said nuts and engaging the under side of the adjustable brackets, as and for the purpose set forth.

"3. In a circular-knitting machine, the combination of vertical standards provided with slots near their upper ends, stationary brackets on said standards below said slots, a lower needle-cylinder supported by said stationary brackets, adjustable brackets connected to said standards by suitable devices passing through said slots and upper needle-cylinder supported by said adjustable brackets, screw heads or nuts secured to the standards below said slots, and jack-screws working in said screw heads or nuts and engaging the under sides of the adjustable brackets whereby the upper needle-cylinders are vertically adjusted, as and for the purpose set forth."

It is difficult to point out specifically in what the inventions consist which were intended to be covered by these claims. The combination of elements enumerated in claim 1 seems to have reference to the first two objects of the inventions mentioned in the specification, namely, first, "to simplify the driving or revolving mechanism of the cylinders to produce a more even and steady movement"; and, second, "to effect the ready and compact assembling of the parts." The combinations of elements enumerated in claims 2 and 3 seem to have reference to the third object of the invention set forth in the specification, namely, "to provide a vertical adjustment of the upper cylinder with relation to the lower one, to enable the varying of the length of the loop as may be required in the operation of producing the fabric."

If, in view of the prior art, these claims possess any patentable novelty, the novelty resides in mere details of construction; and the

defendant's machine does not infringe these claims because it differs substantially in these details. With respect to claim 1, it is sufficient to say that the defendant's machine has no upper or lower brackets on the main frame, which are an element in the claim, no lower annular bed-plate supported by and secured to said brackets, as specified in the claim, and no combination, of an upper cap-plate, upper supporting-ring, gear-ring, and upper cylinder combined with each other and with other parts, as specified in the claim.

Claims 2 and 3 relate to the vertical adjustment of the two cylinders, which was common in the art, and the specific means for accomplishing this adjustment set forth in these claims are not found in the defendant's machine.

The remaining patent in suit is the Barratt patent, No. 601,408. This patent relates to one of the cams which are used in circular-knitting machines, and it is for improvements upon a prior Barratt patent. The specification says:

"My invention has reference to improvements upon the draw-up cam patented to me December 8, 1896, No. 572,690.

"My patented cam is made in two parts adjustable with respect to each other ; but the parts are hinged together by a knee-joint and so constructed with reference to each other that when the part provided with the point of the cam is adjusted it is necessary to also adjust the casting-off part, which is not always desired. Furthermore, the construction of my patented cam is such at the casting-off point that ten or twelve stitches are drawn tight at once. This is objectionable in that if the yarn is tender or uneven when the strain comes on tight stitches it is liable to break and thereby result in imperfect work.

"The objects of my invention therefore are, first, to provide a cam of the kind stated in which the adjustments at either the end where the needles press or the end where the needles are cast off are entirely independent of each other, thereby economizing time in adjusting the cams properly to do the work, and, second, to provide a cam with means for casting off the stitches and drawing them tight, one at a time, so that when the loops are not all of the same length it will draw from the loose to the tight ones and even them up and thereby improve the character of the work and enable the more tender yarn to be more safely used than heretofore and to provide adjustable means on the cam for casting off ; and my invention consists in the peculiarities of construction hereinafter described, and more particularly set forth in the claims."

### The claims are as follows:

"1. In a knitting-machine, the combination with a supporting-bracket having an arm formed with two grooves located adjacent to each other and with an elongated opening between each of said grooves and the nearer vertical edge of the arm of a draw-up cam divided upon a straight line into two independently-adjustable parts, guide-pins projecting from said parts into the grooves, and two fastening-bolts •projecting into said elongated openings for holding said parts independently in adjusted position, substantially as and for the purpose set forth.

"2. In a knitting-machine, the combination with the cam having an opening in its edge and a groove in its face, of a casting-off piece adjustably secured to said cam, and having a stem received by said groove and a laterally-enlarged curved head received by said opening, substantially as and for the purpose set forth.

"3. In a knitting-machine, the combination with the cam, and the casting-off piece adjustably secured thereto and operating to draw the stitches tight one at a time, of a plate adjustably secured to said cam and having a bent upper end extending over the edge thereof at a slight distance therefrom, and an in-

clined arm extending from said bent part of the plate above the casting-off piece, substantially as and for the purpose set forth.

"4. The herein-described draw-up cam comprising two independently-adjustable parts, a casting-off piece adjustably secured upon one of said parts and operating to draw the stitches tight one at a time, and a needle-returning plate adjustably secured to said part of the cam and extending over the end thereof rearward of the casting-off piece and having an arm projecting over said casting-off piece, substantially as and for the purpose set forth."

This patent covers only structural details, and I have grave doubt whether any of the combinations set forth in the claims involve anything more than mere mechanical skill, when considered in connection with the prior art, including the first Barratt patent. But, passing by the question of validity, it is clear that the prior art imposes such a limitation upon these claims that they must be strictly construed.

Limiting claim 1 of the Barratt patent to the guide-pins, and to the location of the elongated openings, as specified therein, the defendant's cam does not infringe this claim. Limiting claim 2 to the groove therein specified, the defendant's cam does not infringe this claim. Limiting claim 3 to the plate "having a bent upper end extending over the edge," etc., the defendant's cam does not infringe this claim; and, for the same reason, the defendant's cam does not infringe claim 4.

Upon the whole case, the complainant has failed to prove infringement of either the Hurley patent or the Barratt patent; and the bill must be dismissed.

Bill to be dismissed.